UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:     Brandon Madison v. ECMD, Inc. *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (In Chambers) Order GRANTING Plaintiff's motion for final approval of class action settlement (Dkt. # 41).** JS-6

    Before the Court is the unopposed motion by Plaintiff Brandon Madison ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), for final approval of the class action and Private Attorneys General Act ("PAGA") action settlement, and for class counsel fees, cost reimbursement, service payment, and administration costs ("Motion"). Dkts. # 41 (Not. Mot.), 41-1 ("*Mot.*"). Defendant ECMD, Inc. ("Defendant") does not oppose. Plaintiff also filed a reply brief reiterating its arguments made in the Motion. Dkt. # 43. The matter came on for hearing on October 3, 2025. Having considering the papers filed and oral argument presented at hearing, the Court **GRANTS** the Motion.

I.   Background

    A.   Factual Allegations

    This is a wage-and-hour class action. Defendant, a North Carolina corporation in the lumber distribution services business, employed Plaintiff from March 2020 to August 2023 as an hourly, non-exempt California employee. Dkts. # 32 ("*SAC*") ¶¶ 4–5, 9, 12; 41-3 ("*Decl. Madison*") ¶ 2. In his Second Amended Complaint ("SAC"), Plaintiff alleges Defendant violated wage-and-hour laws in the following ways: (1) failure to pay overtime and double time wages in violation of California Labor Code ("Labor Code") §§ 510 and Industrial Welfare Commission Wage Order ("Wage Order") No. 1-2001; (2) failure to provide meal periods in violation of Labor Code §§ 226.7, 512, and Wage Order 1-2001;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

(3) failure to provide rest periods in violation of Labor Code §§ 226.7 and Wage Order 1-2001; (4) failure to provide accurate wage statements in violation of Labor Code § 226; (5) failure to pay all wages due at separation in violation of Labor Code §§ 201, 203; (6) acts of unfair competition, in violation of California Business and Professions Code §§ 17200 *et seq.*; and (7) incurring penalties pursuant to PAGA, Labor Code §§ 2698, *et seq.* *See generally SAC.*

Plaintiff alleges that those violations were the result of Defendant's unlawful employment practices. *Id.* ¶ 14. Plaintiff, on behalf of himself and all class members, seeks an award of unpaid wages, penalties, and attorneys' fees and costs, pursuant to wage-and-hour laws. *Id.* p. 27–29. He also seeks general damages, prejudgment interest, interest, injunctive relief, restitution, and disgorgement of Defendant's illegally obtained benefits. *Id.* Finally, Plaintiff seeks an award of unpaid wages, civil penalties, and attorney's fees under PAGA. *Id.* ¶ 114–17; p. 29.

B.    <u>Procedural History</u>

On July 12, 2024, Plaintiff filed this class action in the Superior Court of California, County of Ventura. Dkt. # 1, Ex. 1. On September 12, 2024, Defendant removed the case to this Court. Dkt. # 1. On October 30, 2024, Plaintiff filed a first amended complaint. Dkt. # 18. On December 5, 2024, Plaintiff and Defendant attended a mediation before the Honorable William Pate (Ret.). *Mot.* 3:17–18; Dkt. # 28-2 ¶ 9. At the mediation, the parties reached a settlement in principle, which ultimately resulted in the Class Action and PAGA Action Settlement Agreement and Release of Claims ("Settlement Agreement"). Dkt. # 24, 2; Dkt. # 28-2, Ex. 1 ("*Agreement*").

On April 10, 2025, Plaintiff filed an unopposed Motion for Preliminary Approval of the Class Action and PAGA Action Settlement. Dkt. # 28; *Agreement*. On May 16, 2025, the Court entered a preliminary approval order ("PAO") which initially approved the Settlement Agreement. Dkt. # 37 ("*PAO*"). On April 10, 2025, pursuant to the Settlement Agreement, the parties stipulated to permit Plaintiff to file the SAC. Dkt. # 30. On April 14, 2025, the Court granted Plaintiff leave to file the SAC and deemed it filed as of the date of the order. Dkt. # 31. Plaintiff subsequently filed the SAC. *SAC.*

On August 29, 2025, Plaintiff filed the instant motion for final approval and for attorneys' fees and other costs. *See Mot.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                                    Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

C.    <u>Overview of Final Settlement Agreement</u>

As summarized in the Motion, the Settlement[1] covers approximately 13,181 total
Pay Periods for 177 Participating Settlement Class Members ("PCM") consisting of current
and former California hourly non-exempt employees of Defendant, who were employed
by Defendant in California, including Drivers, at any time during December 10, 2021, to
February 10, 2025. *Mot.* 1:14–18.

The Settlement Agreement establishes a non-reversionary Gross Settlement
Amount ("GSA") of $400,000 plus a $486.14 pro rata increase in the settlement fund, for
a new GSA of $400,486.14, for the benefit of the settlement class, plus employer-side
payroll taxes which Defendant will pay separately. *Id.* 4:24–5:1; 5:20–21; Dkt. # 41-2
(Decl. of Nathalie Hernandez ("*Beltran Decl.*")) ¶ 14. The GSA includes $40,000 to be
allocated for the PAGA claim: $26,000 (65%) to be allocated to the Labor and Workforce
Development Agency ("LWDA") and $14,000 (35%) to be payable to PAGA members on
a pro rata basis. *Agreement* ¶ 62. Based on data provided by Defendant to the settlement
administrator, ILYM Class Action Administrators ("ILYM Group"), there are 114 PAGA
employees and 7,264 PAGA pay periods in the PAGA period, with an estimated average
individual PAGA payment of $63.72. *Id.* 6; *Decl. Beltran* ¶¶ 5, 14.

The GSA also includes a proposed attorney's fee award of $133,495.38, or one-third
of the GSA; a $6,775.92 reimbursement to Class Counsel for reasonable expenses incurred;
a $6,750 payment to ILYM Group; and a $10,000 service award to Plaintiff for his efforts
made on behalf of the Class. *Id.* 2:16–3:4; *Decl. Beltran* ¶ 14.

The Net Settlement Amount ("NSA") is $203,464.84. *Mot.* 5:8. Each PCM who
did not submit a valid and timely request for exclusion will receive an individual class
settlement payment based on a pro rata share of the NSA. *Mot.* 5:22–24. The NSA will
be separated into two funds. *Id.* 6; *Agreement* ¶¶ 5, 55–55.4. Fund 1 represents 60% of
the NSA and is allocated to pay periods worked by PCM who worked as Territory Service
Representatives ("TSR"). *Agreement* ¶ 55.1. Fund 2 represents 40% of the NSA and is
allocated to pay periods worked by Non-TSR PCM. *Id.* Of the 177 PCM, approximately
37 worked as TSR, and approximately 140 worked as Non-TSR. Dkt. # 41-4 ("*Decl.
Hatcher*") ¶¶ 17–18. The average individual settlement payment to be paid to TSR PCM

---

[1] The Court ascribes all capitalized terms not otherwise defined herein with the same
meanings as used in the Settlement Agreement. *See Agreement*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

---

is approximately \$3,299.43. *Decl. Beltran* ¶ 17. The highest individual settlement payment to be paid to TSR PCM is approximately \$5,838.50, and the lowest is approximately \$35.39. *Id.* The average individual settlement payment to be paid to Non-TSCR PCM is approximately \$578.10. *Id.* The highest individual settlement payment to be paid to Non-TSCR PCM is approximately \$1,379.99, and the lowest is approximately \$8.36. *Id.*

In compliance with the Settlement Agreement and PAO, on June 9, 2025, ILYM Group disseminated the Court-approved Notice of Class Action and PAGA Action Settlement and Hearing Date for Final Court Approval and Opt-Out Notice ("Notice Packet"), in both English and Spanish, to 178 Class Members[2] via U.S Postal Service first-class mail. *Decl. Beltran* ¶¶ 3, 7. The Notice Packet included information regarding the nature of the litigation; a summary of the terms of the Settlement Agreement; the definition of the Class; the estimated cost for administration of the settlement; information regarding payments from the GSA; the individual Class Members' total number of Pay Periods; their estimated Individual Class Payment and Individual PAGA Payment; the formulas for calculating Individual Class Payment and Individual PAGA Payment; the dates of the Class Period and PAGA Period; instructions for requesting exclusion from or objecting to the settlement, deadlines for the same; the date, time and location of the hearing on the Motion ("Final Approval Hearing"); and the claims to be released by PCMs and PAGA Employees. *Mot.* 7; *Decl. Beltran* ¶ 4.

Of the 178 Notices mailed, four were returned as undeliverable. *Decl. Beltran* ¶ 8. ILYM Group obtained updated addresses through skip tracing and re-mailed Notices to those four Settlement Class Members. *Id.* ¶ 9. ILYM Group deemed one Notice Packet undeliverable, meaning only a de minimis 0.56% of Class Members did not receive a mailed Notice Packet. *Id.* ¶ 10. ILYM Group also included contact information for the Settlement Administrator and Class Counsel. *Id.*, Ex. A (Notice Packet) p. 8, 15. ILYM Group received no objections to the fairness, reasonableness, or adequacy of the Settlement. *Beltran Decl.* ¶ 6. It received one request for exclusion. *Id.* ¶¶ 11–12.

---

[2] "Class Members" or "Settlement Class Members" is defined in the Agreement as "a person currently or formerly employed in California as an hourly non-exempt employee of Defendant, including Drivers, at any time during the Class Period." *Agreement* 2 ¶ 10. The Court has preliminarily certified the Settlement Class, for settlement purposes only. *See PAO* 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:   Brandon Madison v. ECMD, Inc. *et al.*

    No class member stated an intention to appear at the Final Approval Hearing, and no appearances, objections, or requests for exclusion were made at the hearing.

II.    <u>Final Settlement Approval</u>

    A.    <u>Legal Standard</u>

    A court may finally approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district court's sound discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

> In determining whether a settlement is fair, reasonable, and adequate, the court must balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Id.*; *see also Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list"). Additionally, under Rule 23(e), the Court must "scrutinize the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement;" (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023, 1026 (9th Cir. 2021).

    The district court must approve or reject the settlement—as a whole—after comprehensively exploring all factors. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The court may not delete, modify, or rewrite provisions of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                           Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

settlement.  *See id.*  A court should be cognizant that a settlement "is the offspring of
compromise; the question . . . is not whether the final product could be prettier, smarter or
snazzier, but whether it is fair, adequate and free from collusion."  *Id.* at 1027.  In
determining whether a proposed settlement should be approved, the Ninth Circuit has a
"strong judicial policy that favors settlements, particularly where complex class action
litigation is concerned."  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

  B.    <u>*Hanlon* Factors</u>

      i.    *Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and
            Likely Duration of Further Litigation and Class Certification*

    "The first and second [*Hanlon*] factors require the Court to consider the strength of
the Plaintiffs' case on the merits balanced against the amount offered in the settlement and
the risks of further litigation."  *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC,
2022 WL 425559, at *4 (N.D. Cal. Feb. 11, 2022) (quotations and citation omitted).  The
Court considers the risk of continuing litigation, including the strengths and weaknesses of
Plaintiffs' case on the merits, balanced against the certainty and immediacy of recovery
from the Settlement Agreement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458
(9th Cir. 2000).  There is no "particular formula by which th[e] outcome must be tested."
*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Rather, the Court's
assessment of the likelihood of success is "an amalgam of delicate balancing, gross
approximations and rough justice."  *Id.* at 965 (internal quotation marks and citation
omitted).  "In reality, parties, counsel, mediators, and district judges naturally arrive at a
reasonable range for settlement by considering the likelihood of a plaintiffs' or defense
verdict, the potential recovery, and the chances of obtaining it, discounted to present
value."  *Id.*  "In most situations, unless the settlement is clearly inadequate, its acceptance
and approval are preferable to lengthy and expensive litigation with uncertain results."
*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)
(quotation marks and citation omitted).

    The parties did not file motions that required the Court to evaluate the strength of
the parties' respective positions.  However, Plaintiff notes a settlement reached in a state
court case against Defendant[3] releasing overlapping wage and hour claims significantly

---

[3] *See Clark v. Industrial Apple, Inc.*, No. 21STCV14956 (Cal. Super Apr. 20, 2021)
("*Clark* Action").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:24-cv-07887-MWC-MAA | Date: October 6, 2025 |
| Title: | Brandon Madison v. ECMD, Inc. *et al.* | |

reduced the applicable class period in this action.  *Mot.* 3:18–27.  Defendant also maintained that it implemented and practiced compliant meal, rest, and pay practices; that Plaintiff's meal and rest period claims created predominance issues; that the bonus payments made to the Class Members were discretionary; and that about 10% of the Class Members signed arbitration agreements.  *Id.* 12:21–27.  Other hurdles that affected negotiations included information and documents obtained through informal settlement-based discovery, and the inherent risks, expense, uncertainty, and delay of bringing the action to trial and obtaining class certification.  *Id.* 11:5–11.

Considering the risks and costs of continued litigation, the immediate reward to the Settlement Class is preferable.  *See Rodriguez*, 563 F.3d at 966 (risks in litigating weigh in favor of approving a class settlement); *Catala v. Resurgent Capital Servs. L.P.*, No. 08C-V-2401 NLS, 2010 WL 2524158, at *3 (S.D. Cal. Jun. 22, 2010) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").  Accordingly, the Court finds that the first and second *Hanlon* factors weigh in favor of approval.

ii.    *Risk of Maintaining Class Action Status Through Trial*

Because the Class has only been certified for settlement purposes, *PAO* 11, the risk of maintaining class action throughout trial is not squarely relevant here.  *See In re Biolase, Inc. Sec. Litig.*, No. SACV 13-1300-JLS-FFMX, 2015 WL 12697736, at *7 (C.D. Cal. Jun. 5, 2015) (not considering this factor where no specific risks to maintaining class action status throughout the litigation were apparent).  Had Plaintiff prevailed in a certification motion, however, the risk of decertification would remain.  The Settlement Agreement avoids these risks to the benefit of the Settlement Class.  *LinkedIn*, 2023 WL 8631678, at *6.  Accordingly, this factor supports final approval.

iii.    *Amount Offered in Settlement*

The fourth factor in assessing the fairness of the proposed settlement is the amount of the settlement.  "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Officers for Justice*, 688 F.2d at 624 (internal quotations omitted).  The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Id.* at 625.  "Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.      2:24-cv-07887-MWC-MAA                           Date: October 6, 2025

Title:        Brandon Madison v. ECMD, Inc. *et al.*

with continued litigation." *Contreras v. Armstrong Flooring, Inc.*, No. CV 20-3087 PSG (SKx), 2021 WL 4352299, at *5 (C.D. Cal. Jul. 6, 2021).

In view of Plaintiff's estimated total liability of $4,687,739.57, the Gross Settlement of $400,000 represents 8.5% of the estimated damages for the Class. *See Mot.* 13:25–26. Class Counsel further "review[ed] the information and documentation obtained in this Action" and determined, if the matter was certified as a class action and resulted in verdicts for Plaintiff and the Class Members, that Defendant's reasonable exposure as of mediation is approximately $771,898.34. *Id.* 13:27–14:5. The GSA thus reflects 52% of the estimated recovery amount when taking into account the risks of continued litigation associated with each claim. *Id.*; *see also* Dkt. # 28-2, p. 20.

The Court is satisfied, based on Class Counsel's declaration and representations made at the hearing, that Defendant's reasonable exposure was appropriately reduced. Courts have approved estimated recovery amounts in the 20% to 30% range. *See Brown v. CVS Pharmacy, Inc.*, No. CV 15-7631 PSG (PJWx), 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (approving settlement that represented 27% of possible recovery); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving settlement in overtime wage case that constituted 25–35% of the estimated actual loss to the class). Additionally, the risks of ongoing litigation must be weighed against the recovery that the Settlement Agreement provides for the Settlement Class. *See Catala*, 2010 WL 2524158, at *3; *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) (while settlements will not make most class members completely whole, class members must "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"). And, as noted above, there were no objections to the settlement either made to ILYM Group or to the Court at the Final Approval Hearing.

The Court finds the amount offered in the Settlement is reasonable, and this factor favors final approval.

*iv.    Extent of Discovery Completed and State of the Proceedings*

This factor requires the Court to gauge whether Plaintiffs had sufficient information to make an informed decision about the merits of their case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. The more discovery that has been completed, the more likely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

it is that the parties have "a clear view of the strengths and weaknesses of their cases," and
the more heavily this factor weighs in favor of final approval. *Young v. Polo Retail, LLC*,
No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation
marks omitted).

Prior to mediation, and prior to a settlement in principle, Class Counsel reviewed
"informal settlement-based discovery," including time keeping records, pay records, and
documents such as the personnel files for Plaintiff and policy documents. *Mot.* 11:5–11;
15:26–16:1. Additionally, the parties conducted settlement negotiations with the assistance
of a mediator. *Id.* 3:17–18. This gives the Court further reason to conclude that the parties
possessed "a clear view of the strengths and weaknesses of their cases." *Young*, 2007 WL
951821, at *4.

The time and effort spent on discovery and mediation weigh in favor of granting
final approval.

     *v.*    *Experience and Views of Counsel*

The Court considers the experience of counsel, because "[t]hey are the ones who
are most closely acquainted with the facts of the underlying litigation." *Vasquez v. Coast
Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010). "Parties represented by
competent counsel are better positioned than courts to produce a settlement that fairly
reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d
373, 378 (9th Cir. 1995).

Here, Class Counsel, referring to David P. Myers, Jason Hatcher, Andriana N.
Bravo, and The Myers Law Group, A.P.C., is experienced in wage and hour class litigation
and has successfully litigated numerous class actions and complex cases. *Agreement* ¶ 6;
*Mot.* 16; *see* Dkt. # 28-2 ¶¶ 2–7, 16. The parties reached settlement only after Class
Counsel vigorously and comprehensively investigated the class claims. *Mot.* 16. Class
Counsel relied on their extensive experience when negotiating the proposed settlement and
throughout the duration of the litigation. *Id*.

The Court finds that Class Counsel has adequately represented the proposed
settlement class, which weighs in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.     2:24-cv-07887-MWC-MAA                       Date: October 6, 2025

Title:       Brandon Madison v. ECMD, Inc. *et al.*

<span></span>

      *vi.*     *Presence of a Government Participant*

Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.

      *vii.*    *Class Members' Reaction to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *see also Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Here, notices were sent to 178 Class Members via U.S. mail with one undelivered. *Decl. Beltran* ¶¶ 7, 10.  No Settlement Class Member objected to the Settlement terms, and one Settlement Class Member opted out.  *Decl. Beltran* ¶¶ 11–12.

The Court finds that this positive reaction (or the absence of a negative reaction) weighs in favor of final approval.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (absence of a negative reaction weighs in favor of approval).

      *viii.*   *Balancing the Hanlon Factors*

Having considered all of the *Hanlon* factors, the Court finds that all relevant factors favor final approval.

      C.    <u>PAGA Settlement Approval</u>

The parties have agreed to a PAGA penalty of $40,000, with 65% being paid to the LWDA.  *Agreement* ¶¶ 30, 62.  The estimated average individual PAGA payment is $63.72. *Mot.* 17:11–12.  The portion of the PAGA allocation that will be distributed to the LWDA ($26,000) represents 6.5% of the GSA, which has been approved by courts.  *See, e.g.*, *de Cabrera v. Swift Beef Co.*, No. EDCV 18-2551 PSG (Ex), 2020 WL 5356704, at *9 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                       Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

Cal. Jun. 25, 2020) (collecting cases and noting "courts have approved PAGA claims within the range of zero to two percent of the settlement amount"). The Court finds the settlement of the claims for penalties under PAGA to be reasonable. *See id.*

The Court also finds Plaintiff has complied with LWDA notice requirements. On June 16, 2025, Plaintiff uploaded to the LWDA's portal Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and PAGA Settlement as well as all supporting documents to the same, and the Court's May 16, 2025 Order re: Plaintiff's Motion for Preliminary Approval of Class Action Settlement and PAGA Settlement. *Decl. Hatcher* ¶15, Ex. D; Dkt. # 42 (LWDA Notice), Ex. A. Since Plaintiff submitted notice to the LWDA, the LWDA has not objected to the settlement. *Decl. Hatcher* ¶ 15. Courts have found the "LWDA's non-response is tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount." *See Jordan v. NCI Grp., Inc.,* No. EDCV 16-1701 JVS (SPx), 2018 WL 1409590, at *3 (C.D. Cal. Jan. 5, 2018). Thus, the Court finds that the PAGA settlement is fair, reasonable, and adequate.

D.    *Briseño* Factors

In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must look for signs that class counsel has pursued their own self-interests in the negotiations. *See* 998 F.3d at 1023. The court identified three "red flags" that are indicative of collusion between class counsel and the defendant: (1) if class counsel receives a disproportionate distribution of the gross settlement amount; (2) if there is a "clear-sailing" agreement; and (3) if any of the gross settlement amount reverts to the defendant. *See id.* The Court discusses each "red flag" in turn.

i.    *Disproportionate Distribution of the Settlement*

One sign that class counsel pursued their own self-interests over those of the class is if class counsel receives a disproportionate distribution of the common settlement fund. *See id.* at 1023. For example, in *Briseño*, the Circuit found that class counsel's receipt of $5.85 million of the $8 million gross settlement fund raised red flags, particularly because the class received less than $1 million. *See id.* at 1020.

Here, Class Counsel seeks $133,495.38, or 33 1/3 %, of the Gross Settlement Amount. *Mot.* 18:11–12. In the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25% of the recovery obtained. *In re Bluetooth Headset Prods.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:24-cv-07887-MWC-MAA | Date: October 6, 2025 |
| Title: | Brandon Madison v. ECMD, Inc. *et al.* | |

*Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Courts must "justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

After examining the attorneys' fees Plaintiff seeks compared to the number of hours worked and the stated hourly fee, the Court does not find Class Counsel's fee request to be disproportionate.  The Court discusses this issue further when analyzing Plaintiffs' approval request for attorneys' fees.  *See infra* Section III.

Because Class Counsel did not receive a disproportionate distribution of the Gross Settlement, this factor does not raise a red flag regarding the Settlement Agreement.

  *ii.*  *Presence of a "Clear-Sailing Arrangement"*

A settlement agreement contains a "clear-sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee." *Briseño*, 998 F.3d at 1023.  The mere presence of such an agreement is not "an independent basis for withholding settlement approval." *Id.* at 1027.  Instead, such arrangements are material only if there is evidence of at least one of the other two *Briseño* factors: reverters, and unreasonably high attorneys' fees. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[A] clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." (citation omitted)).

The Settlement Agreement contains a clear sailing arrangement.  *See Agreement* ¶ 59 ("Defendant will take no position on and agrees not to oppose a request by Class Counsel to the Court for an award of attorneys' fees.").  However, the potential for collusion stemming from the arrangement is offset because (1) the attorneys' fees are not excessively high, and (2) the Settlement Agreement does not contain a reverter clause. *See Agreement* ¶ 67 ("Under no circumstances will any portion of the [GSA] revert to [Defendant.]").  Thus, this factor only weakly indicates collusion or inappropriate self-interest. *See Briseño*, 998 F.3d at 1027.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

        *iii.*    *Presence of a Reversionary Clause*

A reversionary clause is one that "returns unawarded fees to the defendant, rather than the class." *Id.* at 1023. As discussed, there is no reversionary clause in the Settlement Agreement. *Agreement* ¶ 67. Accordingly, this factor does not indicate collusion.

        *iv.*    *Briseño Conclusion*

The Court, having considered each of the *Briseño* factors, finds that the Settlement Agreement, on balance, was neither collusive nor based on inappropriate self-interest of Class Counsel.

    E.    <u>Final Approval Conclusion</u>

Having concluded that the *Hanlon* factors favor final approval, and that the Settlement Agreement is appropriate under *Briseño*, the Court **GRANTS** Plaintiff's motion for final approval of the Settlement Agreement.

III.    <u>Attorneys' Fees, Costs and Incentive Awards</u>

Plaintiff moves for (1) attorneys' fees in the amount of $133,495.38 (33.3333% of the Gross Settlement Amount), (2) a $6,775.92 reimbursement to Class Counsel for reasonable expenses incurred, (3) a $6,750 payment to the settlement administrator, Ilym; and (4) a $10,000 service award to Plaintiff for his efforts made on behalf of the Class. The Court addresses each request in turn.

    A.    <u>Attorneys' Fees</u>

Rule 23 permits a court to award "reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-6750 MMM (DTB), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement). Courts can determine the reasonableness of a request for attorneys' fees using either the lodestar method or the percentage-of-recovery method. *See Allison*, 8 F.4th at 1180. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                          Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

and the Ninth Circuit recommends "cross-checking their calculations against a second method." *See In re Bluetooth*, 654 F.3d at 944–45 (deciding courts may use either method to gauge reasonableness while recommending courts cross-check their calculations against a second method).

The Court first analyzes the reasonableness of the request under the percentage-of-recovery method and then cross-checks it against the lodestar method.

       *i.*     *Percentage-of-Recovery Method*

Under the percentage-of-recovery method, courts typically use 25% of the fund as a benchmark for a reasonable fee award. *See id.* at 942. The percentage can vary, however, and courts have awarded more or less than 25% of the fund in attorneys' fees as they have deemed appropriate. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that courts generally award between 20% and 30% of the common fund in attorneys' fees). When assessing reasonableness of fee awards under the percentage-of-recovery theory, courts consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048–50).

       *a.*     *Results Achieved*

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046.

As discussed in Section II(B)(iii), the Gross Settlement Amount, taking into consideration the specific risks associated with each claim and with proceeding on a class basis, equals roughly 52% of the estimated damages for the class, which is well within the range for final approval. *Mot.* 13:27–14:5. Further, the parties reached this result after engaging in adversarial and arm's-length mediation. *Id.* 14:19–20; Dkt. # 28-2 ¶ 9. The result achieved on behalf of the class members supports the requested fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.     2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:       Brandon Madison v. ECMD, Inc. *et al.*

>        *b.*      *Risk of Litigation*

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 (discussing that "[r]isk is a relevant circumstance" in determining an attorney fee award in a common fund case). Plaintiff, and by extension Class Counsel, would have faced substantial obstacles were they to continue litigating this matter. *See supra* Sections III(B)(ii), (iv). In light of the risks associated with this litigation, the result achieved for the Settlement Class supports the requested fees.

>        *c.*      *Skills Required and Quality of Work*

The Court also considers the skills required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. A fee award of one-third of the settlement fund is justified where class counsel "has significant experience in the particular type of litigation at issue." *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCx), 2020 WL 5668935, at *3 (C.D. Cal. Sept. 18, 2020), appeal dismissed, 2021 WL 1546069 (9th Cir. Feb. 16, 2021) (citation omitted). A one-third fee is also appropriate where "[c]ounsel litigated effectively, and their experience was essential for obtaining the result." *Id.*, quoting *Boyd v. Bank of Am. Corp.*, No. 13-561-DOC, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014).

Here, Class Counsel demonstrates that they have considerable experience in litigating class actions, including employment class litigation. *Decl. Hatcher* ¶¶ 2–7. Class counsel also avers that this case required specialist skills to litigate the legal theories relating to wage and hour law and labor law at issue, *Mot.* 20:15–19, and that they utilized their experience while engaging in thorough investigation, informal discovery, mediation and negotiations. *See supra* § III (A)(iv)–(v); *Mot.* 18–19.

Since motion practice was limited, the Court has had little opportunity to gauge Class Counsel's performance firsthand. However, the Court agrees that Class Counsel has experience in wage and hour class action litigation resulting in approved settlements or class certification, so this factor tips in favor of an upwards departure. *See Decl. Hatcher* ¶ 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                          Date: October 6, 2025

Title:      Brandon Madison v. ECMD, Inc. *et al.*

### d.    Contingent Nature and Plaintiff's Financial Burden

Class Counsel took the case on a contingency fee basis, advancing funds and spending time without guarantee of recovery. *Mot.* 20:6–13. Since Class Counsel faced the risk of walking away with nothing, the Court finds that this factor supports approving the requested fees.

### e.    Awards Made in Similar Cases

Class Counsel seeks an award higher than the benchmark for reasonable attorneys' fees under the percentage-of-recovery approach, but an attorney fee of one third of the settlement fund is often found reasonable in class actions. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (affirming 33 1/3 % fee from $1.725 million common fund); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee of $ 4 million from $12 million common fund). A one-third recovery is also on par with settlements in other wage and hour class actions. *See, e.g.*, *Howell v. Advantage RN, LLC*, 2020 WL 5847565, at *4–5 (S.D. Cal. Oct. 1, 2020) (approving an award of 33.33% of total settlement amount); *Contreras v. Worldwide Flight Servs., Inc.*, 2020 WL 2083017, at *6–7 (C.D. Cal. Apr. 1, 2020) (same); *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176, at *8–9 (E.D. Cal. Aug. 10, 2015) (approving 33 1/3 % attorney's fee, which "falls within the 30–40% range that California district courts usually award in wage and hour class actions that result in the recovery of under $10 million."). Accordingly, this factor also supports approving the requested fees.

### f.    Conclusion

The Court finds that Class Counsel's request is reasonable.

### ii.    Lodestar Method Cross-Check

"The lodestar method is a way for the Court to cross-check the reasonableness of a fee award." *Gutierrez v. Amplify Energy Corp.*, No. 8:21-CV-01628-DOC(JDEx), 2023 WL 6370233, at *6 (C.D. Cal. Sept. 14, 2023); *see Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:24-cv-07887-MWC-MAA | Date: October 6, 2025 |
| Title: | Brandon Madison v. ECMD, Inc. *et al.* | |

reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. In cases where attorney investment of time was "minimal," the lodestar analysis "may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050. On the other hand, when the "litigation has been protracted," lodestar may suggest "a higher percentage." *Id.*

The Court has reviewed the timekeeping charts Class Counsel provided, which list each attorney's name, number of years working, number of hours worked on this case, and hourly rate. *See Decl. Hatcher* ¶ 10, Ex. A. Class Counsel asserts that the lodestar is $116,807.00 based on the 226.2 hours that Myers Law Group, A.P.C. ("MLG") spent on this case. *See id.* In requesting $133,495.38, Class Counsel requests a multiplier of 1.14. *Id.* The Court will examine the propriety of Class Counsel's lodestar value by determining whether the hourly rates and number of hours are reasonable.

> a. *Reasonable Rates*

"[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The fee applicant bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (cleaned up). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts may also "rely on [their] own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

MLG applied hourly rates at $725 for a 12th year attorney, $525 for a 7th year attorney, $425 for a 1st to 2nd year attorney, and $195 for paralegals. *Hatcher Decl.*, Ex. A. To support its proffered hourly rates, Class Counsel attaches the Laffey Matrix. *Hatcher Decl.*, Ex. C. The matrix shows hourly rates of $948 for attorneys 11–19 years out of law school; $581 for attorneys 4–7 years out of law school, $473 for attorneys 1–3 years out of law school, and $258 for a paralegal or law clerk, from the time period June 2024 to May 2025. *Id.* Class Counsel's hourly rates are thus in line with the Laffey Matrix. However,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                     Date: October 6, 2025

Title:       Brandon Madison v. ECMD, Inc. *et al.*

Class Counsel does not provide justification for its reliance on the matrix. *See generally id.* Other courts in this district have declined to rely on the Laffey Matrix because it "reflects market rates for attorneys' fees incurred in complex litigation in Washington, D.C., [and] is of limited relevance in determining reasonable attorneys' fees here." *See Sarabia v. Ricoh USA, Inc.*, No. 8:20-CV-00218-JLS-KES, 2023 WL 3432160, at *7 (C.D. Cal. May 1, 2023); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 263 (N.D. Cal. 2015) ("[t]he Ninth Circuit has questioned the relevance of the Laffey matrix to determining a reasonable rate in [this district]" (citing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)).

     The Court independently takes judicial notice of the *2024 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report"), published by Wolters Kluwer. The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices. *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, 2021 WL 4786889, at *3 (C.D. Cal. Aug. 24, 2021) (turning to the 2020 Real Rate Report "as a useful guidepost to assess the reasonableness of [claimed] hourly rates in the Central District of California"). For litigation hourly rates in Los Angeles, the Real Rate Report documents a range of $548 (first quartile) to $1,268 (third quartile) for partners and $477 (first quartile) to $946 (third quartile) for associates. *See 2024 Real Rate Report* at 16. For paralegals, the Real Rate Report provides a general median rate of $229, but the rate is not specific to Los Angeles. *See id.* at 9.

     Because Class Counsel's hourly rates also fall within the Real Rate Report guideposts, the Court finds the rates are reasonable.

                    *b.     Reasonable Hours*

     "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (cleaned up). To satisfy this burden, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). When it considers evidence of the hours worked, "[t]he district court [] should exclude from this initial fee calculation hours that were not reasonably expended." *Id.* at 434 (quotation omitted). Hours not reasonably expended are those that are "excessive,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

redundant, or otherwise unnecessary." *Id.* A district court may reduce hours by either conducting an hour-by-hour analysis or by making an across-the-board percentage cut. *See $28,000.00 in U.S. Currency*, 802 F.3d at 1106.

In this matter, three MLG attorneys and one paralegal spent 74.7 hours on motions; 99.8 hours on mediation and settlement; 15.1 hours in case development/management; 15 hours on the pleadings; and 21.6 hours in status conferences, for a total of 226.2 hours, as of the time Class Counsel filed the Motion. *Hatcher Decl.*, Ex. A.

Based on Class Counsel's supporting documentation and representations made at the Final Approval Hearing, the Court is satisfied that the number of hours spent on each task, as well as the distribution of hours between the junior and senior attorneys in the two largest tasks (motion practice and mediation), are appropriate and reasonable. *Id.*, Ex. A, p. 3–4.

> c.    *Conclusion*

Based on the hourly rates of each attorney and the time entries through the time of filing, Class Counsel's total lodestar is $116,807. *Hatcher Decl.* ¶ 10. In requesting $133,495.38, Class Counsel requests a multiplier of just 1.14, which falls at the lower end of the Ninth Circuit's "presumptively acceptable range of 1.0–4.0." *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (citing *Vizcaino*, 290 F.3d at 1051 (upholding a 3.65 multiplier)); *Gutierrez*, 2023 WL 6370233, at *7 (referring to a multiplier of 2.23 as "modest").

The Court's lodestar cross-check supports the granting of Class Counsel's requested attorneys' fees.

B.    <u>Litigation Costs</u>

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048 (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

Here, Class Counsel request reimbursement of expenses incurred in the amount of $6,775.92. *Hatcher Decl.* ¶ 12. The costs include mediation, filing fees, service of process, travel, paying the PAGA notice fee, and postage. *Id.*, Ex. B (itemizing litigation expenses).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:    Brandon Madison v. ECMD, Inc. *et al.*

Class Counsel lists out the expenses by date and includes reference numbers to each purchase. *See id.*

The Court finds the expense amounts Class Counsel seeks to have reimbursed are reasonable and necessary. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (granting costs for similar expenses), Sarabia, 2023 WL 3432160, at *11 (same). Thus, the Court **GRANTS** the requested costs.

C.    Incentive Award

Plaintiff requests an incentive award of $10,000. *Mot.* 28–30. "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Courts have discretion to issue incentive awards to class representatives. *Id.* at 958-59 (9th Cir. 2009). The awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* Courts evaluate incentive awards relative to a named plaintiff's efforts, considering "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (alterations in original) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Courts also compare the incentive awards to the total settlement by looking at "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 947 (9th Cir. 2015) (*quoting Staton*, 327 F.3d at 977).

Here, Plaintiff is a TSR PCM. *Decl. Madison* ¶ 2. The highest individual settlement payment for a TSR PCM is estimated to be $5,838.50, and the average payment is $3,299.43. *Decl. Beltran* ¶ 17. Plaintiff initiated contact with MLG concerning his employment with Defendant and has actively participated throughout this lawsuit, which was first filed in July 2024. *Decl. Madison* ¶ 6. Among other tasks, Plaintiff assisted with investigation, provided documents and information regarding Defendant's policies and practices to counsel, participated in mediation and post-mediation settlement discussions, and reviewed settlement documents. *Decl. Hatcher* ¶ 14, *Decl. Madison* ¶¶ 6–7. As Class Counsel notes, few individuals are willing to act as a Class Representative for fear of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                    Date: October 6, 2025

Title:      Brandon Madison v. ECMD, Inc. *et al.*

negatively impacting their employment prospects. *Decl. Hatcher* ¶ 14. Plaintiff also signed a general release as part of this settlement. *Id.*

Plaintiff's proposed service award appears reasonable, in light of service payments that have been granted in other cases. *See, e.g.*, *Ochinero v. Ladera Lending*, No. SACV 19-1136 JVS (ADSx), 2021 U.S. Dist. LEXIS 192406, at *24–26 (C.D. Cal. July 19, 2021) (granting $12,500 service payment in comparison to total settlement amount of $485,000, where Plaintiff spent about 125 hours on the case conducting research into her employer's practices, secured representation, assisted in drafting and reviewing the complaint, and engaging in interviews with counsel). The Court has reviewed the submitted declarations and the approximate individual settlement payments and finds the requested service award is appropriate.

IV.    <u>Conclusion</u>

For the foregoing reasons, the Court:

1.    **GRANTS** Plaintiff's Unopposed Motion for Final Approval and approves settlement of the action between Plaintiffs and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate;

2.    **DIRECTS** the parties to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

3.    **GRANTS** an award to Class Counsel for $133,495.38 in attorneys' fees and $6,775.92 in costs;

4.    **GRANTS** an incentive award of $10,000 to Plaintiff as the Class Representative; and

5.    **DISMISSES WITH PREJUDICE** this action based upon the parties' Settlement Agreement. Without affecting the finality of this Order, the Court **RETAINS** jurisdiction to enforce the Settlement Agreement and resolve any disputes that might arise during its term.

**IT IS SO ORDERED.** JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-07887-MWC-MAA                              Date: October 6, 2025

Title:      Brandon Madison v. ECMD, Inc. *et al.*

                                                                    :

                                      **Initials of Preparer**    TJ